IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>$30,830 in U.S. Currency,<br><br>　　　　　　Defendant in Rem. | No. 3:20-CV- |

**VERIFIED COMPLAINT FOR FORFEITURE IN REM**

Pursuant to Supplemental Rule G(2) of the Federal Rules of Civil Procedure, the United States of America alleges this *in rem* complaint for forfeiture against $30,830 in U.S. currency ("Defendant Property"):

**NATURE OF THE ACTION**

1.　This is a forfeiture action under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C). The United States seeks the forfeiture of the Defendant Property, because it is moneys furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, and/or property intended to facilitate such an exchange in violation of 21 U.S.C. §§ 841(a) and/or 846. The Defendant Property is also subject to forfeiture under 18 U.S.C. § 981(a)(1)(C), because it was property which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1952, a specified unlawful activity as defined in 18 U.S.C. §§ 1957(c)(7) and 1961(1).

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1345 and 1355(a), and in rem jurisdiction is proper under 28 U.S.C. § 1355(b).

3. Venue in this Court is proper under 28 U.S.C. §§ 1355(b)(1)(A) and 1391(b), because acts or omissions giving rise to the forfeiture occurred in the Northern District of Texas and a substantial part of the events giving rise to the forfeiture occurred in the Northern District of Texas.

## PARTIES

4. The Plaintiff is the United States of America.

5. The Defendant Property is $30,830 in U.S. currency. The Defendant Property was seized from Kendric Reyes-Cruz at DFW Airport, Texas, on October 19, 2020. On October 21, 2020, it was deposited into a Loomis bank account in Dallas, Texas.

6. Reyes-Cruz, a resident of Sarasota, Florida, claimed the Defendant Property and sought judicial referral through his attorney Leslie Sammis.

## FACTS

7. The factual basis for the forfeiture in this case involves an investigation by the DFW Airport Task Force ("Task Force") at DFW Airport ("DFW"). One of the Task Force's responsibilities at DFW is to investigate the use of the airport and the airlines that service the airport to perpetrate or facilitate the illegal transportation of proceeds obtained from criminal conduct including drug trafficking.

8. Those trafficking in illegal narcotics must often find a way to transport the proceeds of their criminal conduct without drawing the attention of law enforcement. Air travel is one mode used by the traffickers or couriers working for or with them to transport such proceeds. The use of air travel allows drug traffickers to keep their ill-gotten gains "off the books" and outside the banking system, which they know is regularly monitored by banking and governmental authorities.

9. Investigators with the Task Force are specially trained and learn by experience how to identify those who are using the federal aviation system to facilitate narcotic trafficking.

10. On October 19, 2020, Task Force members including Task Force Officer ("TFO") Duane Cortes were observing passengers departing on American Airlines Flight 1331 bound for Los Angeles, California, at Terminal A, Gate A25.

11. Los Angeles is known to the Task Force as a source city for illicit narcotics. The Task Force often monitors flights to source cities like Los Angles looking for traffickers or their couriers who are transporting concealed cash intended to pay for such narcotics.

12. TFO Cortes and other officers were in plain clothes with no weapons displayed and only badges showing.

13. TFO Cortes noticed a young adult male, later identified as Kendric Reyes-Cruz, preparing to board Flight 1331. Reyes-Cruz stopped suddenly when he saw TFO

Cortes, and then focused intently on his cellphone as if nervously trying to avoid eye contact

14. TFO Cortes asked Reyes-Cruz to see his boarding pass.  Without looking up from his cellphone, Reyes-Cruz held up a folded piece of paper but did not stop to show it to TFO Cortes. TFO Cortes asked Reyes-Cruz again if he could see his boarding pass.  Reyes-Cruz turned to TFO Cortes wide-eyed as if in shock. During the encounter, TFO Cortez also noticed Reyes-Cruz breathing heavily.  In TFO Cortes's experience and based on his training, such unusual nervousness is potentially a sign that a person may be hiding something.

15. Reyes-Cruz repeated the question back to TFO Cortes, "You want to see my boarding pass?" TFO Cortes said, "Yes, please" and Reyes-Cruz handed him the boarding pass.

16. Reyes-Cruz agreed to answer questions about his travel plans. Reyes-Cruz said he was travelling alone to Los Angeles just to "hang out" for a couple of days. Reyes-Cruz said he had packed his own bags, which had been in his possession during the trip. He denied possessing weapons, narcotics, large amounts of prescription medicine, or large amounts of U.S. or foreign currency.

17. During this conversation, TFO Cortes was standing in the wide jet bridge area so that Reyes-Cruz and others had an unobstructed path to board the plane.

18. TFO Cortes asked Reyes-Cruz if he could search his carryon bags, and Reyes-Cruz consented. He began to unzip his "Cookies" brand backpack. In TFO Cortes's experience, this brand of bag, which is advertised as "smell proof," is frequently used by persons involved in trafficking marijuana to conceal marijuana's pungent odor.

19. After unzipping his "Cookies" bag, Reyes-Cruz began to walk away. TFO Cortes told him they did not need to move, but Reyes-Cruz appeared scared and continued to walk away. He then stopped and handed his backpack to TFO Cortes with shaking hands.

20. In the backpack, TFO Cortes found several bundles of U.S. currency wrapped in rubber bands. Reyes-Cruz initially told TFO Cortes that he had $7,000 in cash, then changed his answer to $12,000, then $15,000, $17,000 and finally $30,000.

21. Reyes-Cruz could not provide any documentation connecting the cash to a bank account belonging to him. He told TFO Cortes that he had not filed any income tax returns in 2018 or 2019.

22. Rockwall County K9 Detective Bobby Burks is a certified handler of Luke, a specially trained canine. Luke is a certified narcotics odor detection canine. Both are certified by the National Narcotic Detector Dog Association. Luke can detect the odors of four controlled substances including marijuana, cocaine, heroin, and methamphetamine.

23. Det. Burks observed Luke give a positive alert for the presence of an odor of narcotics on or about Reyes-Cruz's bag.

24. TFO Cortes told Reyes-Cruz he believed the currency was illicit proceeds of criminal activity or money laundering and the currency was going to be seized. Reyes-Cruz then said that he was going to give some of the currency to his brother and maybe look at a car to buy.

25. Reyes-Cruz also showed TFOs some pictures on his phone depicting marijuana. The phone was seized for forensic examination, which remains pending.

26. The money seized from Reyes-Cruz totaled $30,830. In TFO Cortes's experience, possession of such a large amount of currency is not typical of legitimate airport travelers.

## FIRST CAUSE OF ACTION
## 21 U.S.C. § 881(a)(6)
### (forfeiture of property related to drug trafficking)

27. The United States reasserts all allegations previously made.

28. Under 21 U.S.C. § 881(a)(6), "moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of" 21 U.S.C. § 801 et seq. are subject to forfeiture.

29. Under 21 U.S.C. § 841(a), it is "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." An attempt or conspiracy to do the same is also prohibited by 21 U.S.C. § 846.

30. As set forth above, the Defendant Property is moneys furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, and/or property intended to facilitate such an exchange in violation of 21 U.S.C. §§ 841(a) and/or 846. This property is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

## SECOND CAUSE OF ACTION
### 18 U.S.C. § 981(a)(1)(C)
**(forfeiture related to violation of the Travel Act)**

31. The United States reasserts all allegations previously made.

32. Under 18 U.S.C. § 981(a)(l)(C), any property which constitutes or is derived from proceeds traceable to an offense constituting a "specified unlawful activity," or a conspiracy to commit such offense, is subject to forfeiture to the United States.

33. Under 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1), interstate travel or transportation in aid of racketeering enterprises in violation of 18 U.S.C. § 1952 is a specified unlawful activity.

34.     18 U.S.C. § 1952(a) prohibits, inter alia, any individual who uses "any facility in interstate or foreign commerce,":

> with the intent to –
>
> (1) distribute the proceeds of any unlawful activity; or [ ]
> (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity"

from thereafter performing or attempting to perform the conduct described in subparagraphs (1) and (3) above.

35.     18 U.S.C. § 1952(b) specifically includes within the definition of "unlawful activity" "any business enterprise involving . . . narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act)."

36.     As set forth above, the Defendant Property is property which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1952.  This property is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(l)(C).

## REQUEST FOR RELIEF

WHEREFORE, the United States respectfully asserts that the Defendant Property is forfeitable to the United States under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).

The United States further requests:

    A.     That, pursuant to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Rule G(3)(b)(ii), the Clerk of the

Court issue a Summons and Warrant of Arrest *in Rem* as to the Defendant Property.

B. That Notice of this action be given to all persons known or thought to have an interest in or right against the Defendant Property;

C. That a Judgment of Forfeiture be decreed against the Defendant Property;

D. That upon the issuance of a Judgment of Forfeiture, the United States Marshals Service or its delegate be able to dispose of the Defendant Property according to law; and

E. That the United States receives its costs of court and all further relief to which it is entitled.

DATED this 5th day of April, 2021.

PRERAK SHAH
ACTING UNITED STATES ATTORNEY


*/s/ Elyse J. Lyons*
Elyse J. Lyons
Assistant United States Attorney
Texas Bar No. 24092735
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8774
Facsimile: 214-659-8805
Elyse.lyons@usdoj.gov

ATTORNEY FOR PLAINTIFF

## VERIFICATION

I am a Task Force Officer (TFO) with Homeland Security Investigations (HSI). As a TFO with the HSI, my duties and responsibilities include participating in the investigation and prosecution of persons who violate federal laws.

I have read the contents of the foregoing Complaint for Forfeiture *In Rem* and verify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the factual statements contained therein are true and correct to the best of my knowledge and belief.

Executed on this 2nd day of ~~March~~ April, 2021.

Duane Cortes, Task Force Officer
Homeland Security Investigations